UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x
GOVERNMENT EMPLOYEES INSURANCE CO.,                  :
et al.,                                              :
                                                     :
                          Plaintiffs,                :
                                                     :        REPORT &
           -against-                                 :        RECOMMENDATION
                                                     :        13-CV-04039 (SLT) (SMG)
ALEXANDRE MICHEL SCHEER, M.D., et al.                :
                                                     :
                          Defendants.                :
--------------------------------------------------------------------- x
GOLD, STEVEN M., U.S.M.J.:

# INTRODUCTION

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, and GEICO Casualty Co. (collectively, "GEICO" or "plaintiffs") allege that

defendants engaged in a scheme to submit fraudulent claims for reimbursement pursuant to New

York's "no-fault" law. The no-fault law allows medical service providers that meet state

licensing requirements to obtain payment from insurers for services provided to insureds who are

injured in motor vehicle accidents. These payments include necessary expenses for medical

treatment up to $50,000. N.Y. Ins. Law §§ 5102(a)(1), (b); 5103. However, a provider of

healthcare services that does not comply with applicable licensing requirements is not eligible

for reimbursement under New York's no-fault law. 11 NYCRR § 65-3.16(a)(12). State

licensing requirements "prohibit nonphysicians from owning or controlling medical service

corporations." *State Farm Mutual Automobile Insurance Company v. Mallela*, 4 N.Y.3d 313,

321 (2005). Thus, "insurance carriers may withhold payment for medical services provided by

fraudulently incorporated enterprises to which patients have assigned their claims." *Id.* at 319.

Plaintiffs allege that defendants improperly obtained no-fault payments because they formed a medical services corporation that was not owned and controlled by a physician, and because they submitted claims for reimbursement for services that were, at least in some instances, not medically necessary or not rendered. Plaintiffs assert claims under RICO as well as for common law fraud and unjust enrichment.

Four of the defendants have failed to appear in or otherwise defend against this action: Ruvin Katz ("Katz"), Ben-Zion Kliot ("B. Kliot"), Zahi Kliot ("Z. Kliot"), and Pavel Yutsis, M.D. ("Yutsis") (collectively, "Defaulting Defendants"). Upon plaintiffs' applications, Docket Entries 13-16, the Clerk of Court noted defendants' default, Docket Entries 17-20. Plaintiffs subsequently filed a motion for default judgment and a memorandum along with supporting declarations and exhibits. Docket Entries 22-24. The Honorable Sandra L. Townes then referred the motion to me for report and recommendation. Docket Entry 25.[1]

In addition to the Complaint and its attached exhibits 1 through 4, Docket Entry 1, I consider plaintiffs' memorandum in support of their motion for default judgment ("Pl. Mem."), Docket Entry 23, and the November 11, 2013 Declaration of Max Gershenoff, counsel for plaintiffs ("Gershenoff Decl.") and its attached exhibits A through D ("Gershenoff Exs."), Docket Entry 24, in making this Report. Having considered these submissions, I respectfully recommend that plaintiffs' motion be granted with respect to defendants Katz, B. Kliot and Z. Kliot, and that judgments be entered against these defaulting defendants and in favor of plaintiffs as more fully set forth below. I further recommend, for reasons set forth below, that plaintiffs' motion be denied with respect to defendant Yutsis.

---

[1] Following Judge Townes' referral, I afforded plaintiffs the opportunity to submit additional briefing and supporting documentation in an order, which I instructed plaintiffs to serve by mail on defendants. Docket Entry 26. Plaintiffs declared that the order was returned as "Attempted not Known" for defendant Yutsis and "unclaimed" for the other three defaulting defendants. Declarations of Max Gershenoff, Docket Entries 28, 29.

## FACTS

The facts set out below are drawn primarily from plaintiffs' original Complaint

("Compl."), Docket Entry 1 and, as indicated below, are deemed true for purposes of evaluating

liability.  The defendants in default are four individuals, Katz, B. Kliot, Z. Kliot, and Yutsis.  The

first three, Katz, B. Kliot, and Z. Kliot (collectively known as the "Management Defendants"),

are accused of conduct related to their involvement with Gotham Medical, P.C. ("Gotham

Medical" or "Gotham").  Defaulting defendant Yutsis was an independent contractor who

worked with Gotham Medical and purported to perform certain medical services.  *See, e.g.,*

Compl. ¶¶ 3(iv), 177-79.  Since late 2009, defendants have submitted hundreds of fraudulent no-

fault insurance charges relating to medically unnecessary, illusory, or otherwise unreimbursable

examinations, physical therapy, and diagnostic tests (collectively "the Fraudulent Services") that

they claimed were provided to victims of automobile accidents in New York State.  Compl. ¶¶ 1,

10.  The defendants used false billing codes to inflate and exaggerate the level of services that

were actually performed and to bill for services that were never provided.  Compl. ¶ 2.

The Complaint alleges generally that the Management Defendants recruited a licensed

medical doctor, Alexandre Michel Scheer, M.D., to set up Gotham Medical and to pose as its

true owner.  Compl. ¶¶ 39-49.  Scheer's name on the certificate of incorporation and biennial

statements created the appearance that Gotham was in compliance with New York's requirement

that all medical services corporations be owned and controlled by licensed physicians.  Compl.

¶¶ 40-42.  However, the Management Defendants were the ones who in fact provided all of the

funds to start Gotham Medical and who owned and controlled it.  Compl.  ¶¶ 43-46.

In an attempt to hide their ownership of the medical service provider, the defendants

entered into a series of agreements with Gotham Medical.  These agreements provided that

Gotham Medical would make exorbitant payments to the Management Defendants, purportedly

in return for services such as management, marketing, billing, and collections. Compl. ¶ 48. These agreements allegedly kept Gotham perpetually indebted to the Management Defendants and enabled the defendants to maintain control over Gotham's revenues and accounts. Compl. ¶ 50. Thus, when GEICO made insurance payments to Gotham, the Management Defendants reaped the benefit. Compl. ¶ 46.

In addition to seeking reimbursement despite having been fraudulently incorporated, Gotham Medical further defrauded GEICO by seeking reimbursement for medically unnecessary treatment. Compl. ¶¶ 52 *et seq.* The Complaint describes a fraudulent scheme with several aspects. First, patients were obtained by "runners" who were paid by the Management Defendants for each patient they recruited. Compl. ¶¶ 52-54. The patients were then subjected to a treatment protocol that had little or nothing to do with the patients' needs but was designed to maximize the billing that could be submitted for reimbursement. Compl. ¶¶ 54-55. For example, defendants used reimbursement codes applicable only to patients with moderately or highly severe injuries who spent up to one hour with the billing physician, when in fact the patients to whom the codes were applied had only minor injuries, if any, and were not seen for one hour. Compl. ¶¶ 59-62. Plaintiffs further allege that defendants created false medical histories indicating that patients had sustained serious injuries as a result of automobile accidents when in fact they had not. Compl. ¶¶ 63-66, 73. Plaintiffs allege that bills seeking reimbursement for follow-up tests and examinations were similarly fraudulent because the examinations and tests, to the extent they were performed at all, were not medically necessary and were not performed in the manner required for reimbursement pursuant to the billing codes used. Compl. ¶¶ 80-183. The bills were fraudulent in other respects as well. For example,

defendants used billing codes indicating that the underlying service was rendered by a physician when in fact it was provided by an unlicensed technician. Compl. ¶¶ 126-28.

Gotham Medical also evaded state requirements by employing independent contractors to render health services.

> Where . . . health services are performed by a provider who is an independent contractor with [a professional services corporation, or PC] and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services.

Compl. Ex. 4, New York State Insurance Department, Informal Opinion of General Counsel dated February 21, 2001. Defendants, however, sought reimbursement for services rendered by independent contractors such as Yutsis, who was paid no employee benefits, was responsible for his own malpractice insurance, and had no taxes withheld on his behalf. Compl. ¶¶ 184-92.

The bills and documentation described above were submitted to GEICO systematically on hundreds of NF-3 forms and/or treatment reports. Compl. ¶ 193.[2] Plaintiffs allege that the Management Defendants used the United States Mails or caused the mails to be used to submit hundreds of fraudulent bills over a period of more than two years, and plaintiffs include a schedule listing a representative sample of the bills submitted by Gotham Medical to GEICO as an exhibit to their Complaint. Compl. ¶¶ 219-20, Ex. 1.

In November 2012, an indictment was unsealed in the United States District Court for the Southern District of New York charging Scheer, B. Kliot, Z. Kliot, and Rubin, among others, with conspiracy to commit healthcare fraud and mail fraud in connection with the operation of Gotham Medical. See Compl., Ex. 3. B. Kliot, Z. Kliot, and Rubin were accused in the indictment of "supervis[ing] the submission of fraudulent billing to insurance companies" on

---

[2] An NF-3 claim form (also known as "Verification of Treatment by Attending Physician or Other Provider of Health Service") is required by the New York State Department of Insurance. A healthcare provider may also submit claims using the Health Care Financing Administration insurance claim form ("HCFA-1500 form"). Compl. ¶ 21.

Gotham's behalf.  Indictment ¶ 8.  Each of the Management Defendants entered a plea of guilty.

Compl. ¶¶ 35-37.

## DISCUSSION

### I. Partial Judgment Against Defendants in Default

While the four defendants discussed above have defaulted, defendants Scheer and

Gotham Medical have answered the Complaint and appeared.  Docket Entries 11-12.  Pursuant to

Federal Rule of Civil Procedure 54(b), "when multiple parties are involved [in an action], the

court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties

only if the court expressly determines that there is no just reason for delay."  While "[t]here are

no fixed criteria for invoking this rule," courts typically consider whether the "adjudicated claims

are independent from the remaining claims" and whether a "defendant's solvency or ability to

pay a judgment in the future is in question."  *Mitchell v. Lyons Prof'l Servs.*, 727 F. Supp. 2d

116, 119-20 (E.D.N.Y. 2010) (internal citations omitted).  Courts frequently delay entry of final

judgment as to defaulting defendants pending resolution of the appearing defendants' claims

where defendants may be held jointly and severally liable, *see, e.g.*, *Pennacchio v. Powers*, 2010

WL 3767141, at *7 (E.D.N.Y. Aug. 9, 2010) (collecting cases); however, entering such

judgment is contrary to settled case law only when true joint liability is at issue, "such that, as a

matter of law, no one defendant may be liable unless all defendants are liable."  *Friedman v.

Lawrence*, 1991 WL 206308, at *2 (S.D.N.Y. Oct. 2, 1991); *see also Mitchell*, 727 F. Supp. 2d at

119.

Although the defaulting defendants in this case are alleged to be participants in a scheme

with the appearing defendants, the Complaint makes specific allegations particular to both the

Management Defendants and Yutsis.  Plaintiffs also state that there is a danger that their ability

to recover from the defaulting defendants may be hampered if entry of judgment is delayed. Pl. Mem. 20-21. Each of the Management Defendants has entered a guilty plea to criminal charges that overlap with plaintiffs' claims, and the likelihood that further proceedings will call into question plaintiffs' right to judgment against them is therefore, at best, remote. I respectfully recommend that final judgments be entered as to the defaulting Management Defendants even while plaintiffs' claims against Scheer and Gotham Medical remain pending.

## II.  Elements of Plaintiffs' Claims

Plaintiffs allege that all defaulting defendants should be held liable for common law fraud, unjust enrichment, and RICO conspiracy. They further seek to hold the defaulting Management Defendants, Katz, B. Kliot, and Z. Kliot liable for a substantive RICO violation. The elements required to establish each these claims are set forth below.

### A.  Substantive RICO Claims

RICO provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of" the statute. 18 U.S.C. § 1964(c). To establish a civil RICO claim, "a plaintiff must show '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)).

Plaintiffs allege that the defaulting Management Defendants, Katz, B. Kliot, and Z. Kliot, have violated Section 1962(c) of the RICO statute. A complaint asserts a valid claim pursuant to Section 1962(c) by pleading facts showing "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of

which affect interstate or foreign commerce." *Allstate Ins. Co. v. Valley Phys. Med. & Rehab., P.C.*, 2009 WL 3245388, at *3 (E.D.N.Y. Sept. 30, 2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Plaintiffs allege that the Management Defendants engaged in mail fraud. A violation of the mail fraud statute, 18 U.S.C. § 1341, constitutes "racketeering activity." 18 U.S.C. § 1961(1)(A); *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 77 (E.D.N.Y. 2006). A plaintiff may establish mail fraud by demonstrating "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of the interstate mails . . . in furtherance of the scheme." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 293 (E.D.N.Y. 2013) (quoting *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)). To satisfy the third prong, GEICO need not allege that each defendant used the mails personally in furtherance of the scheme, but rather only that the defendants "acted 'with knowledge that the use of the mails [would] follow in the ordinary course of business,' or that 'such use [could] reasonably be foreseen, even though not actually intended.'" *Abramovich v. Oliva*, 2012 WL 3597444, at *10 (E.D.N.Y. Aug. 20, 2012) (quoting *United States v. Tocco*, 135 F.3d 116, 124 (2d Cir. 1998)); *see also United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989) (in the criminal context, collecting cases and noting that, to demonstrate the causation element of mail fraud, it must be demonstrated only that use of the mails was reasonably foreseeable in the course of business).

To demonstrate that racketeering acts constitute a pattern, a plaintiff must allege that a defendant committed "at least two related predicate acts . . . within a ten year period." *SKS Constructors*, 458 F. Supp. 2d at 77 (citing 18 U.S.C. § 1961(5)). These acts may not be "isolated or sporadic;" rather, they must "pose a threat of continued criminal activity." *Id.* at 79

(quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)). The Supreme Court has held that this threat may be established by a showing of either open-ended or closed-ended continuity. Open-ended continuity generally occurs when an "inherently unlawful act [is] performed at the behest of an enterprise whose business is racketeering activity" or when there is "a basis to infer that similar [racketeering activity will] occur in the future." *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 466 (2d Cir. 1995) (internal citations omitted). Closed-ended continuity, by contrast, involves activity over a specific, but substantial, period of time. *Id.* at 466-67. While there is no particular length of time that indicates closed-ended continuity, the Second Circuit has "never held a period of less than two years" to be sufficient. *Amiron Dev. Corp. v. Sytner*, 2013 WL 1332725, at *7 (E.D.N.Y. Mar. 29, 2013) (internal citations and quotation marks omitted).

The final element required under RICO is that a defendant's racketeering acts must constitute participation in the affairs of an enterprise involved in interstate commerce. The definition of a RICO enterprise is broad, and includes "any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). As further explained by the Supreme Court, an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," as demonstrated "by evidence of an ongoing organization . . . [and] by evidence that the various associates function as a continuing unit." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Participation in a RICO enterprise "is not limited to those with primary responsibility" or to "those with a formal position in the enterprise." *DeFalco*, 244 F.3d at 309 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). Instead, a RICO defendant need only "have some part in directing [the enterprise's] affairs." *Id.*; *see also Conte*

*v. Newsday*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) (quoting *Reves*, 507 U.S. at 179). This requirement is satisfied if the defendant participated in the operation or management of the enterprise, which the Second Circuit has described as a "relatively low hurdle for plaintiffs to clear, especially at the pleading stage." *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004).

### B. RICO Conspiracy Claims

In addition to their substantive RICO claims, plaintiffs seek to hold each of the defaulting defendants liable for conspiring to violate RICO. Section 1962(d) makes it unlawful "for any person to conspire to violate any of the [other] provisions of" Section 1962. Having established the existence of a RICO enterprise, a plaintiff alleging a conspiracy need only prove in addition that the defendants "know the general nature of the conspiracy and that the conspiracy extends beyond [their] individual roles." *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 89 (E.D.N.Y. 2011) (quoting *United States v. Zichetello*, 208 F.3d 72, 99 (2d Cir. 2000)). While a plaintiff must allege that the defendant agreed to participate in the affairs of the charged enterprise, the complaint need not allege a conspiracy to commit any particular predicate act. *Crabhouse*, 801 F. Supp. 2d at 89; *see also United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009); *United States v. Yannotti*, 541 F.3d 112, 121 (2d Cir. 2008).

### C. State Common Law Claims

Plaintiffs assert state law claims for fraud and unjust enrichment. A plaintiff asserting a claim of common law fraud under New York law must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (internal quotation

marks omitted). The third and fourth elements of common law fraud bear further explanation. The intent prong of common law fraud is established "[w]hen it is clear that a scheme, viewed broadly, is necessarily going to injure." *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 220-21 (2d Cir. 2000) (internal citation and quotation marks omitted). A plaintiff's reliance on intentionally fraudulent statements is reasonable without further investigation when "matters are held to be peculiarly within defendant's knowledge . . . as [plaintiff] has no independent means of ascertaining the truth." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997). A plaintiff asserting a claim for unjust enrichment under New York law "must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *State Farm Mut. Auto Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

## III.     Liability of the Defaulting Defendants

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Thus, despite a defendant's default, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *United States v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action); *Microsoft Corp. v. Computer Care Ctr., Inc.*, 2008 WL 4179653, at *6

(E.D.N.Y. Sept. 10, 2008).  I now consider whether the facts alleged in the complaint are sufficient to establish the liability of each of the defaulting defendants.

As a preliminary matter, I note that plaintiffs' Complaint alleges that Gotham Medical is both a professional corporation and, as required for RICO liability, an enterprise involved in interstate commerce.  Compl. ¶¶ 10, 218.  GEICO's allegation that Gotham is a RICO enterprise is supported by the fact that Gotham is incorporated: "RICO requirements are most easily satisfied when the enterprise is a formal legal entity," and "[c]orporations are expressly included in the definition of enterprise."  *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 274 (E.D.N.Y. 2012) (citing 18 U.S.C. § 1961(4)).  Moreover, plaintiffs' allegations establish open-ended continuity; because Gotham was fraudulently incorporated, it could not lawfully seek reimbursement for providing medical services, and thus its "business [was] racketeering activity."  *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d at 466.   Closed-ended continuity has also been established; as discussed in greater detail below in connection with damages, Gotham submitted bills for reimbursement to which it was not entitled over a period exceeding two years, and there is every reason to believe it would have continued to do so but for the criminal prosecution of its principals.  *See Gov't Emp. Ins. Co. v. Hollis Med. Care, P.C.*, 2011 WL 5507426, at *9 (E.D.N.Y. Nov. 9, 2011).  What remains to be examined, then, is whether the Complaint adequately alleges that the defaulting defendants participated, or conspired to participate, in the conduct of Gotham's affairs through a pattern of mail fraud, as well as whether the elements required to support state law claims for fraud and unjust enrichment have been established.

*A. Management Defendants*

As noted above, the defaulting Management Defendants – B. Kliot, Z. Kliot, and Katz – are alleged by plaintiffs to be the persons who in fact controlled the medical clinics, despite the fact that they are not medical professionals. Against these defendants, plaintiffs bring claims for violations of the substantive RICO statute, RICO conspiracy, common law fraud, and unjust enrichment (second through fifth causes of action in the Complaint, ¶¶ 217-243). As noted above, each of these three defendants has pled guilty to criminal charges related to their involvement with Gotham Medical. Compl. ¶¶ 35-37; Pl. Ex. 3, Docket Entry 1-12 (Indictment in *United States v. Katz, et al.*, 12-Cr-884 (DLC)). For the reasons set forth below, I conclude that plaintiffs have adequately alleged the elements of each of these claims with respect to each of the defaulting Management Defendants.

Plaintiffs adequately allege that, as true owners of Gotham Medical, the Management Defendants participated in the affairs of the enterprise described in the Complaint. Plaintiffs allege that Scheer, who never invested any money in the professional corporation, "ceded true beneficial ownership and control over the professional corporation to the Management Defendants." Compl. ¶¶ 43-45. The nonphysician Management Defendants utilized management, billing, marketing, and lease agreements to maintain illegal ownership and supervisory authority over Gotham Medical. Compl. ¶¶ 48-51. The arrangement between Scheer and the Management Defendants created the appearance that the Gotham Medical was owned and operated by a medical professional when in fact it was not. Allegations, like those made here, that defendants were either medical professionals who "agreed to serve as the 'paper' owners" of a medical services corporation, or were the actual owners and operators of the corporation and did not have medical licenses, were held sufficient to support a RICO claim in

*Excel Imaging*, 879 F. Supp. 2d at 274. *See also Gov't Emp. Ins. Co. v. Hollis Med. Care, P.C.*, 2011 WL 5507426, at *7 (E.D.N.Y. Nov. 9, 2011) (reviewing allegations against Management Defendants similar to those made here and finding them sufficient).

The Complaint further alleges that the bills and corresponding documentation created as a result of the fraudulent tests and examinations rendered by Gotham Medical were sent through the mails as part of the Management Defendants' scheme to defraud, and that the Management Defendants either used the mails themselves or acted with knowledge that the mails would be used in furtherance of their fraudulent scheme. Compl. ¶¶ 219-220; Compl. Ex. 1. As noted above, the mailing requirement of 18 U.S.C. § 1341 has been liberally construed; "it need only be shown that [the defendant] acted with 'knowledge that the use of the mails will follow in the ordinary course of business,' or that 'such use can reasonably be foreseen, even though not actually intended.'" *Abramovich*, 2012 WL 3597444, at *10. The allegations of the Complaint are thus sufficient to establish defendants' use of the mails.

That the mailings were sufficient in number and continuity to constitute a pattern of racketeering activity is clear from Exhibit 1 to the Complaint. Plaintiffs allege that this "representative sample of the fraudulent bills and corresponding mailings submitted to GEICO" includes 21,352 claims submitted between July 30, 2010 and February 22, 2013. Compl. ¶ 219; Compl. Ex. 1, Docket Entries 1-2 through 1-10. The Complaint further alleges that GEICO sustained damages as a result of defendants' scheme. *See, e.g.*, Compl. ¶ 222. Thus, each of the elements of mail fraud is satisfied.

Plaintiffs have also established that the Management Defendants engaged in a RICO conspiracy. First, plaintiffs allege that the three defendants ran the alleged scheme to defraud together. Compl. ¶¶ 44-45, 48. The Complaint further alleges that the Management Defendants

"commenced a search for a licensed physician who would be willing to sell the use of his medical license to them so they could fraudulently incorporate a medical professional corporation and use it to submit large-scale fraudulent no-fault billing to insurers." Compl. ¶ 39. Then, to "circumvent New York law . . . the Management Defendants entered into a secret scheme with Scheer" in which Scheer would falsely represent himself as the owner of Gotham in "exchange for a designated salary or some other form of compensation . . . ." Compl. ¶ 42. These allegations are clearly sufficient to establish a conspiracy, and I therefore recommend that the Management Defendants be held liable for RICO conspiracy pursuant to 18 U.S.C. § 1962(d).

The allegations regarding the Management Defendants' scheme to submit no-fault bills on behalf of clinics that were run by laypersons rather than medical professionals are also sufficient to state claims for both common law fraud and unjust enrichment. The elements of mail fraud are similar to those of common law fraud except that common law fraud also requires a showing of plaintiffs' reasonable reliance on defendants' fraudulent misrepresentations. *Lichtenstein v. Reassure Am. Life Ins. Co.*, 2009 WL 792080, at *12 (E.D.N.Y. Mar. 23, 2009) (citing *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 660 (2008)). GEICO alleges that the defendants systematically concealed their fraud and that it reasonably relied on fraudulent statements made by the defaulting defendants. Compl. ¶¶ 195-206 (alleging, *inter alia*, that GEICO is under statutory and contractual obligations to process claims within thirty days, and that GEICO relied upon the "facially valid documents submitted" by defendants). Moreover, the material facts misrepresented by defendants were uniquely within their own knowledge.

GEICO alleges in its Complaint that the Management Defendants benefited from Gotham's filing of false claims. Compl. ¶ 241. These allegations, along with those

demonstrating that defendants were not entitled to the monies they induced GEICO to pay, are sufficient to establish liability for unjust enrichment. *See Allstate Ins. Co. v. Borgoraz*, 818 F. Supp. 2d 544, 552 (E.D.N.Y. 2011) (finding unjust enrichment where the defendants "receiv[ed] no-fault benefits to which they were not legally entitled"). Accordingly, and for the reasons stated above, I respectfully recommend that the Management Defendants be held liable on plaintiffs' claims under RICO and for common law fraud and unjust enrichment.

## B. Yutsis

Defendant Yutsis is described in the Complaint as "a licensed physician who was associated with Gotham Medical as an independent contractor." Compl. ¶ 3(iv). Yutsis is not alleged to have been an actual owner of Gotham Medical, or a doctor who owned Gotham on paper but ceded control over it to non-physicians. Rather, plaintiffs allege that Yutsis is properly held liable because of his activities as an independent contractor.

The Complaint describes an elaborate scheme involving examinations and tests that were not medically necessary or properly reimbursable, referred to by plaintiffs as the "Fraudulent Services." Compl. ¶¶ 1, 52-192. With the limited exception discussed below, however, the Complaint does not attribute any specific conduct in connection with the Fraudulent Services to Yutsis, and instead attributes the delivery of the Fraudulent Services to the defendants collectively. With respect to several aspects of the Fraudulent Services scheme, moreover, plaintiffs allege that "[n]either Scheer, nor any other licensed healthcare provider [or physician] associated with Gotham Medical," performed the services required of a licensed medical practitioner. Compl. ¶¶ 62, 89, 100.[3] In contrast, plaintiffs allege that neither Scheer *nor Yutsis* provided required services in connection with one limited aspect of the alleged fraud involving

---

[3] Paragraphs 62 and 89 use the term "healthcare provider," while paragraph 100 uses the term "physician."

videonystamography, or "VNG," tests. Compl. ¶ 178. By explicitly referring to Scheer in the earlier paragraphs, yet referring specifically to Yutsis only in the paragraphs concerning VNG testing, the Complaint implies that Yutsis was only involved in the VNG testing aspect of the Fraudulent Services scheme.

As suggested above, Yutsis is explicitly alleged to have participated in one limited aspect of the Fraudulent Services scheme involving VNG tests. Compl. ¶¶ 161-79. Plaintiffs contend that the VNG tests for which Gotham Medical sought reimbursement were not medically necessary, that the VNG test results obtained were useless because the patients were not properly prepared for the tests, and that defendants misrepresented the identity of the persons administering the tests. Compl. ¶¶ 170-79. The conduct attributed to Yutsis, however, does not demonstrate or plausibly suggest that he knowingly participated in the Fraudulent Services scheme.

Plaintiffs allege that Yutsis reviewed VNG test data at a location other than the one where the tests were administered and never met with the tested patients. Compl. ¶ 179. The Complaint does not allege, however, that it is inherently improper for a doctor to review VNG test data without a patient examination. The Complaint also alleges that the tested patients did not have symptoms that warranted VNG tests and that the patients did not undergo the preparation required to render their test results meaningful. Compl. ¶¶ 170-73. The Complaint does not allege, however, that Yutsis knew or should have known how the patients were prepared, or whether the tested patients had symptoms or complaints that would have made the tests appropriate; in fact, as noted above, the Complaint alleges that Yutsis never met the tested patients. The Complaint alleges that the bills submitted for reimbursement by Gotham Medical falsely indicated that Yutsis performed the underlying services. Compl. ¶¶ 177-79. The

Complaint does not allege, however, that Yutsis participated in preparing the bills or knew that those bills attributed work to him that he did not perform. Finally, the Complaint alleges that the bills submitted by Gotham Medical for services rendered by Yutsis were fraudulent because Gotham was not entitled to reimbursement for services provided by an independent contractor. Compl. ¶ 191. The Complaint does not allege, however, that Yutsis participated in the submission of bills by Gotham based upon work he performed or that he knew Gotham was improperly seeking reimbursement for his services.

> To be viable, a complaint
>
> must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and references to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (1955) omitted). The allegations against Yutsis suggest the possibility that he participated in the fraudulent scheme described in the Complaint, but they do not support a reasonable inference of liability. Accordingly, I conclude that plaintiffs' motion for entry of default judgments should be denied with respect to Yutsis.

## IV. Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon

evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiffs have submitted a declaration from Sharyl Darenthal, a GEICO Claims Manager, together with supporting documents, to demonstrate their entitlement to damages. Darenthal Decl., Pl. Ex. B, Docket Entry 24-2. The defaulting defendants have failed to submit any response to these filings. In light of these circumstances, a hearing on the issue of damages is not warranted.

Plaintiffs seek to recover from the defaulting defendants the payments GEICO made to them. For the reasons discussed above, the Management Defendants were not entitled to submit claims for reimbursement, and any payments made by plaintiffs to them are therefore appropriately recovered. Plaintiffs have submitted records of the payments made by GEICO to Gotham Medical that Darenthal compiled using GEICO's earnings reporting system. Darenthal Decl. Ex. 1, Docket Entry 24-2. GEICO uses this system to generate IRS Forms 1099-MISC, suggesting its reliability, and the information relating to Gotham Medical was culled by using Gotham's tax identification number. Darenthal Decl. ¶ 4. These records indicate that GEICO made payments in the amount of $1,068,599.30 to Gotham Medical between August 4, 2010 and May 22, 2013. Darenthal Decl. ¶ 6; Ex. 1.[4] I therefore recommend that this amount be awarded against the Management Defendants.

Plaintiffs further seek an award on their RICO claims holding the individual defendants jointly and severally liable for treble damages. Treble damages and joint and several liability are properly imposed under RICO. *See Allstate Ins. Co. v. Kumar*, 2013 WL 2395748, at *3

---

[4] The Court arrives at a number slightly greater when it adds the payments contained in Darenthal Exhibit 1. However, because plaintiffs request an amount that is lower than the Court's calculation, I use the sum that they propose.

(S.D.N.Y. June 3, 2013) (holding that "[d]efendants in a RICO suit are jointly and severally liable for damages") (citing *Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1074 n.1 (2d Cir. 1993); *City of New York v. Pollack*, 2006 WL 522462, at *17 (S.D.N.Y. Mar. 3, 2006)); 18 U.S.C. § 1964(c) (providing that plaintiffs in civil RICO cases are entitled to "recover threefold the damages [they] sustain").  I therefore recommend that the amount of damages be trebled, and that judgment be entered against the Management Defendants, jointly and severally, in the total amount of $3,205,797.90.  To the extent plaintiffs seek additional damages from the defaulting defendants on their state law claims, I recommend that their application be denied; the same damages – payments made by GEICO to Gotham Medical for providing medical services – are sought in each count, and separate awards under RICO and state law would accordingly be duplicative.

Plaintiffs also request prejudgment interest pursuant to C.P.L.R. §§ 5001 and 5004 at the rate of 9% per annum and contend that pre-judgment interest is mandatory on damages for fraud.  Pl. Mem. at 19.  However, because I recommend an award of treble damages under RICO, I also recommend that there be no award on the state common law fraud claims, and therefore no prejudgment interest.

Finally, although the RICO statute provides for recovery of attorney's fees, 18 U.S.C. § 1964(c), plaintiffs have not submitted a fee application or itemized their costs.  I therefore recommend that fees and costs not be included in the Court's final judgment.

## CONCLUSION

For the reasons stated in this Report and Recommendation, I respectfully recommend that plaintiffs' motion for default judgment be granted with respect to Management Defendants Ben-Zion Kliot, Zahi Kliot and Ruvin Katz, and that judgment be entered against these defendants,

jointly and severally, in the amount of $3,205,797.90.  I further recommend that plaintiffs'

motion for default judgment with respect to defendant Pavel Yutsis be denied.  Finally, I

recommend that any final judgment provide that plaintiffs may not recover a total of more than

$3,205,797.90 on all of their claims against all defendants based upon payments made by

GEICO to Gotham Medical.

Any objections to the recommendations made in this Report must be submitted within

fourteen days after filing of the Report and, in any event, no later than September 5, 2014.  *See*

28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2).  Failure to file timely objections may waive

the right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892

F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

SO ORDERED.

_____/s/_____

STEVEN M. GOLD
United States Magistrate Judge

Dated:          Brooklyn, New York
               August 18, 2014